UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
SURINDER SINGH,                                              :
                                                             :        ECF CASE
                        Plaintiff,                           :
                                                             :
                                                             :
                v.                                           :
                                                             :        07 Civ. 6178 (SCR)
EMILIO GONZALEZ, Director of the U.S.                        :
Bureau of Citizenship and Immigration Services,             :
et al.,                                                      :
                                                             :
                        Defendants.                          :
                                                             :
------------------------------------------------------------ x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT


                                        MICHAEL J. GARCIA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for Defendants
                                        86 Chambers Street
                                        New York, New York 10007
                                        Telephone: (212) 637-2729
                                        Facsimile: (212) 637-2717

WENDY H. WASZMER
Assistant United States Attorney
- Of Counsel -

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Plaintiff's Immigration History and Removal Proceedings . . . . . . . . . . . . . . . . 3

    B .    Allegations of the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    LEGAL AND STATUTORY BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A.    The Political Branches' Plenary Power Over Immigration
                to the United States and the Deferential Standard of
                Judicial Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        B.    Motions to Reopen Removal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 6

        C.    Applications for Adjustment of Immigration Status . . . . . . . . . . . . . . . . 8

    II.    THE COMPLAINT SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . 10

        A.    The Court Should Dismiss the Complaint Because
                Plaintiff Alleges No Valid Statutory Basis of Subject
                Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
                1.    No Jurisdiction Lies Under the Mandamus
                        Statute or the APA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                2.    No Jurisdiction Lies Under the Federal Question Statute . . . . . . 15

        B.    The Court Should Also Dismiss the Complaint for Failure
                 to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Defendants Emilio Gonzalez, Director of the United States Bureau of Citizenship and

Immigration Services ("CIS"), Michael B. Mukasey, Attorney General of the United States,[1]

Kevin D. Rooney, Director of the Executive Office for Immigration Review, and Julie L. Meyers,

Assistant Secretary of the United States Immigration and Customs Enforcement ("ICE")

(collectively, the "Defendants"), by and through their attorney Michael J. Garcia, United States

Attorney for the Southern District of New York, respectfully submit this memorandum of law in

support of their motion to dismiss the Complaint pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff Surinder Singh's ("Plaintiff's") Complaint in this action should be dismissed for

lack of subject matter jurisdiction and for failure to state a claim upon which relief can be

granted.  Plaintiff, a citizen of India whose lawful status in the United States expired on June 20,

2003, seeks an order compelling ICE to join in his motion to reopen his removal proceedings,

and also seeks an "immediate hearing" regarding his eligibility for adjustment of his immigration

status.  However, for the following reasons, the Court lacks jurisdiction to issue the relief

Plaintiff seeks in this case.

First, no subject matter jurisdiction for Plaintiff's claims lies under the mandamus statute,

28 U.S.C. § 1361, or the Administrative Procedure Act ("APA"), 5 U.S.C. § 701.  Mandamus

relief may only be issued to compel a federal official to perform a duty he is directed by law to

perform.  Similarly, the APA exempts from judicial review "agency action...committed to

---

[1] Plaintiff's Complaint names former Attorney General Alberto Gonzales as a defendant
in this action.  Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Michael B.
Mukasey is automatically substituted as a defendant.

discretion by law." 5 U.S.C. § 701(a)(2). In this case, Plaintiff seeks an order compelling ICE to join a motion to reopen, which is a wholly discretionary decision under the regulation governing such pleadings. Accordingly, there is no jurisdiction to review such a claim under either the mandamus statute or the APA.

Moreover, the Court also lacks jurisdiction under the mandamus statute or the APA to consider Plaintiff's claims seeking an order compelling ICE to convene a hearing regarding his application for adjustment of status and requiring the Attorney General of the United States to grant him adjustment of status. The Supreme Court has held that "adjustment of status is a matter of grace, not right." Elkins v. Moreno, 435 U.S. 647, 667 (1978). Accordingly, judges in this Circuit have consistently held that the Court lacks subject matter jurisdiction to compel the adjudication of adjustment applications.

Nor does jurisdiction lie under the federal question statute, 28 U.S.C. § 1331, because Plaintiff has no protected interest in a discretionary reopening of his removal proceedings or his status in the United States.

Finally, Plaintiff's Complaint should also be dismissed for failure to state a claim upon which relief can be granted. As Plaintiff has no constitutionally protected right to adjustment of status, or any other discretionary relief for that matter, he cannot challenge the denial of such relief as a violation of due process. Indeed, as Plaintiff's lawful status in the United States expired on June 20, 2003, he is statutorily ineligible for adjustment of status. Accordingly, the Complaint should be dismissed in its entirety.

# BACKGROUND

**A.     Plaintiff's Immigration History and Removal Proceedings**

Plaintiff, a native and citizen of India, entered the United States unlawfully on September 9, 1992. See Compl., at ¶¶ 8-9.[2] On March 12, 1997, the Immigration and Naturalization Service ("INS")[3] commenced removal proceedings against Plaintiff.[4] Id. at ¶ 10.

On August 20, 1997, Plaintiff married a United States citizen, and on September 12, 1997, filed an I-130 Petition for an Alien Relative ("I-130 Petition"), which sought classification of Plaintiff as a relative of a United States citizen for the purpose of seeking an immigrant visa, which was denied by the INS's District Director on January 21, 2000. See Compl., at ¶¶ 12-15.

---

[2] For the purpose of this motion to dismiss, Defendants presume the accuracy of the factual allegations contained in the Complaint. See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-64 (2007). Defendants also submit the Declaration of Wendy H. Waszmer, dated November 16, 2007, which includes information relating to Plaintiff's immigration proceedings that is not addressed in the Complaint. The Court may refer to evidence outside of the pleadings in order to resolve factual issues on which the existence of jurisdiction depends. See, e.g., Hamm v. United States, 483 F.3d 135, 137 (2d Cir. 2007); Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002).

[3] As of March 1, 2003, the INS ceased to exist as an agency within the United States Department of Justice, and its functions were transferred to three agencies within the United States Department of Homeland Security: (1) ICE, responsible for enforcement of the immigration laws; (2) CIS, responsible for administering services and benefits under the immigration laws; and (3) United States Custom and Border Protection, responsible for, inter alia, customs inspections and the United States Border Patrol. See Homeland Security Act of 2002, Pub. L. 107-296, § 471(a); 116 Stat. 2135, 2205 (Nov. 25, 2002).

[4] Plaintiff's Complaint alleges that "deportation" proceedings were commenced against him by the INS. See Compl., at ¶ 10. Until September 1996, aliens were subject to "exclusion" or "deportation" proceedings depending upon whether they had made an "entry" into the United States. See Landon v. Plasencia, 459 U.S. 21, 25-27 (1982) (explaining distinction between proceedings). In 1996, Congress substituted a single "removal" proceeding for the formerly distinct "deportation" and "exclusion" proceedings. See Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") § 304(a)(3); Rojas-Reyes v. INS, 235 F.3d 115, 120 (2d Cir. 2000).

The Board of Immigration Appeals ("BIA") thereafter reversed the INS's decision and granted Plaintiff's I-130 Petition.[5] Id. at ¶ 23.

On December 11, 2002, the INS's District Director granted Plaintiff an extension of his voluntary departure[6] until June 20, 2003. See Compl., at ¶ 24. As a result of this extension of Plaintiff's period for voluntary departure, Plaintiff filed a motion to reopen his removal proceedings in order to file an I-485 Application for Adjustment of Status to that of a Lawful Permanent Resident ("I-485 Adjustment of Status Application") based on the approval of his I-130 Petition. Id. at ¶¶ 24-27.

Plaintiff requested that ICE (formerly INS) join the motion to reopen his removal proceedings. See Compl., at ¶ 25. On May 15, 2003, ICE joined Plaintiff's motion to reopen his deportation proceedings, for the limited purpose of allowing Plaintiff to file the I-485 Adjustment of Status Application. Id. at ¶ 26. On June 10, 2003, Plaintiff filed his motion to reopen with the Immigration Court. Id. at ¶ 27.

On October 3, 2002, Plaintiff's motion to reopen was denied by an Immigration Judge because the pleading lacked its supporting exhibits. See Compl., at ¶ 29. At the time the motion to reopen was denied, Plaintiff's period for voluntary departure had already expired. Id. at ¶ 30. Plaintiff had not been granted an extension of the June 20, 2003 departure date. Id. at ¶¶ 30-31.

_____

[5] The approval of Plaintiff's I-130 Petition was only a preliminary step in applying for lawful permanent residence status. An alien seeking lawful permanent resident status must also demonstrate eligibility for adjustment of his status pursuant to 8 U.S.C. § 1255(a). See also 8 C.F.R. §§ 245.1(a), 245.2(a) (implementing regulations).

[6] Pursuant to 8 U.S.C. § 1229c, the Attorney General has discretion to permit an alien to depart the United States voluntarily, at his own expense, in lieu of being subject to removal or deportation proceedings.

Plaintiff therefore had no lawful status in the United States as of June 20, 2003. Id. at ¶¶ 30, 36.

Plaintiff thereafter requested that ICE join in a second motion to reopen his deportation proceedings. See Compl., at ¶ 32. However, because Plaintiff's period for voluntary departure had expired, ICE declined to join his motion to reopen. See Declaration of Wendy H. Waszmer, dated November 16, 2007, Ex. A (Opposition of ICE to Plaintiff's Motion to Reopen).

**B.  Allegations of the Complaint**

On January 12, 2007, Plaintiff filed the Complaint in this action seeking relief compelling ICE to join a motion to reopen his removal proceedings, and ordering the Attorney General to grant him adjustment of status. Specifically, the Complaint seeks a writ of mandamus compelling ICE to join a motion to reopen his removal proceedings. See Compl., at ¶¶ 37-41 ("First Cause of Action - Mandamus"). The Complaint also claims that Plaintiff is entitled, as a matter of "due process," to an "immediate hearing" regarding his I-485 Adjustment of Status Application. See Compl., at ¶¶ 42-47 ("Second Cause of Action - Violation of Due Process"). Finally, the Complaint contends that Plaintiff is entitled to adjustment of status and / or "damages in an amount to be set by the Court" for the alleged delay in the adjudication of his application. See Compl., at ¶¶ 48-54 ("Third Cause of Action – Violation of 28 U.S.C. § 1255").

## ARGUMENT

**I.    LEGAL AND STATUTORY BACKGROUND**

**A.    The Political Branches' Plenary Power Over Immigration to the United States and the Deferential Standard of Judicial Review**

As the Supreme Court has recognized, "[t]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of

the Federal Government.  Over no conceivable subject is the legislative power of Congress more complete."  Reno v. Flores, 507 U.S. 292, 305 (1993) (citations and internal quotation marks omitted); accord Landon v. Plasencia, 459 U.S. 21, 34 (1982) ("[C]ontrol over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature.").  Thus, the Supreme Court has repeatedly held that judicial review in immigration matters is narrowly circumscribed.  See INS v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999) ("we have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context"); Miller v. Albright, 523 U.S. 420, 434 n.11 (1998) (same); Fiallo v. Bell, 430 U.S. 787, 792 (1977) (same).  Specifically, the Court has stated:

> Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult. . . .  Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws. . . . Appropriate deference must be accorded its decisions.

INS v. Miranda, 459 U.S. 14, 19 (1982) (citations omitted); Zhang v. Slattery, 55 F.3d 732, 748 (2d Cir. 1995) ("it is not the role of the federal courts to administer the executive branch" in immigration matters).

B.     Motions to Reopen Removal Proceedings

A motion to reopen an alien's removal proceedings, the pleading to which Plaintiff seeks ICE's consent, "asks that the proceedings be reopened for new evidence and a new decision, usually after an evidentiary hearing."  Zhao v. United States Dep't of Justice, 265 F.3d 83, 90 (2d Cir. 2001); see also 8 C.F.R. § 1003.2(c)(1) (2005).  As motions to reopen seek a new hearing following the completion of an administrative removal proceeding – including the issuance of a final removal order and possible judicial review – such pleadings are disfavored:

- 6 -

> Motions for reopening of immigration proceedings are disfavored for the same
> reasons as are petitions for rehearing and motions for a new trial on the basis of
> newly discovered evidence. This is especially true in a deportation proceeding,
> where, as a general matter, every delay works to the advantage of the deportable
> alien who wishes merely to remain in the United States.

INS v. Doherty, 502 U.S. 314, 323 (1992) (citations omitted); see also INS v. Abudu, 485 U.S.

94, 108 (1988) (cautioning that granting such motions "too freely will permit endless delay of

deportation by aliens creative and fertile enough to continuously produce new material facts

sufficient to establish a prima facie case") (quoting INS v. Wang, 450 U.S. 139, 144 (1981)).

For these reasons, the regulation governing motions to reopen removal proceedings "is

couched solely in negative terms," and "requires that under certain circumstances a motion to

reopen be denied, but does not specify the conditions under which it shall be granted." Doherty,

502 U.S. at 322 (citation omitted). Specifically, the regulation provides that "[a] motion to

reopen proceedings shall not be granted unless it appears to the [BIA] that evidence sought to be

offered is material and was not available and could not have been discovered or presented at the

former hearing." 8 C.F.R. § 1003.2(c)(1) (2005) (emphasis added); see also 8 U.S.C. §

1229a(c)(7)(B) ("The motion to reopen . . . shall be supported by affidavits or other evidentiary

material."); Zhao, 265 F.3d at 90 (motion to reopen "must state what new facts would be proven

at a hearing"); Matter of Haim, 19 I. & N. Dec. 641, 642, 1988 WL 235452 (BIA April 11, 1988)

("A party seeking to reopen [the] proceedings must state the new facts which he intends to

establish, supported by affidavits or other evidentiary material.").

The BIA may deny a motion to reopen on its merits for "at least" three independent

reasons: (1) the movant has not introduced previously unavailable, material evidence; (2) the

movant has not established a prima facie case for the underlying relief sought; or (3) even if the

first two requirements are met, the movant would not be entitled to the discretionary grant of relief. See Doherty, 502 U.S. at 322-23; Abudu, 485 U.S. at 104-05. Thus, the BIA may, in its discretion, deny a motion to reopen even if the movant has made out a prima facie case of eligibility. See 8 C.F.R. § 1003.2(c) (2005) (BIA "has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief").

C.    Applications for Adjustment of Immigration Status

An alien seeking admission to the United States as an immigrant – i.e., someone who wishes to reside indefinitely in the United States – typically must obtain a visa in order to clear inspection at entry. See, e.g., Kooritzky v. Reich, 17 F.3d 1509, 1510 (D.C. Cir. 1994) (discussing visa allocation generally). Historically, to become permanent residents, all "aliens in the United States who were not immigrants had to leave the country and apply for an immigrant visa at a consulate abroad." Elkins v. Moreno, 435 U.S. 647, 667 (1978); accord Randall v. Meese, 854 F.2d 472, 473, 474-74 (D.C. Cir. 1988) ("to achieve reclassification from nonimmigrant to permanent resident status, [an] alien had to leave the country and, in the ordinary course, apply to a United States consular officer abroad for an immigrant visa") (citations omitted) (Ginsburg, then C.J.).[7]

However, in recognition of "aliens in this country in nonimmigrant status who could show they qualified for immigrant status and who wished to avoid a costly trip out of the country

---

[7] The INA establishes two major avenues for an alien to obtain an immigrant visa. One is to have a qualified relative who is a United States citizen or lawful permanent resident file an immigrant visa petition on the alien's behalf to classify her as the petitioner's relative for visa purposes, see generally 8 U.S.C. §§ 1153(a), 1154(a); the other is to have a potential sponsoring employer file a petition on the alien's behalf (after first obtaining certification from the U.S. Department of Labor) to classify him as one of several types of necessary employees, see 8 U.S.C. § 1153(b).

merely to obtain a visa," <u>Choe v. INS</u>, 11 F.3d 925, 928 (9th Cir. 1993), Congress created the

adjustment of status mechanism in INA Section 245, <u>see</u> 8 U.S.C. § 1255(a); <u>INS v.

Bagamasbad</u>, 429 U.S. 24, 25 n.* (1976) (per curiam) (statute enacted so that "such aliens would

not inevitably be required to leave the country and apply to a United States consul in order to

obtain permanent-resident status"); <u>Jain v. INS</u>, 612 F.2d 683, 687 (2d Cir. 1979) (alien "may

now adjust his status to that of an immigrant without leaving the country").[8]

Thus, INA Section 245(a) permits the Attorney General to adjust the status of an eligible

alien already present in the country to that of a lawful permanent resident where the alien:

(1) has been "inspected and admitted or paroled" into the United States; (2) has submitted an

application to the CIS office with jurisdiction over her place of residence; (3) possesses an

"immediately available" immigrant visa; and (4) is "admissible to the United States for

permanent residence." 8 U.S.C. § 1255(a); <u>see</u> 8 C.F.R. §§ 245.1(a), 245.2(a) (2003)

(implementing regulations). An alien seeking adjustment of status bears at all times the burden

of persuading the Attorney General (and his delegates) to grant that relief as a favorable exercise

of his considerable discretion. <u>Elkins</u>, 435 U.S. at 667 ("adjustment of status is a matter of grace,

not right"); <u>Jain</u>, 612 F.2d at 687 (adjustment considered "extraordinary relief"); <u>Yeung v. Reno</u>,

---

[8] Thus, adjustment of status is the domestic analog to the process by which aliens apply
for immigrant visas at consulates abroad. <u>See</u> <u>Choe</u>, 11 F.3d at 928 ("the applicant for
adjustment, although physically present within the United States, is considered exactly as though
he were at the border applying for initial entry") (citing cases); <u>Castano v. INS</u>, 956 F.2d 236,
237 n.1 (11th Cir. 1992) (adjustment is "the stateside equivalent of being issued a visa by a
consular official abroad"); <u>Amarante v. Rosenberg</u>, 326 F.2d 58, 61 (9th Cir. 1964) ("when the
alien seeks an adjustment of his status . . . the Attorney General performs the same functions as
does a consular officer when the alien is seeking to enter the country"); <u>cf.</u> <u>Abdullah v. INS</u>, 184
F.3d 158, 164 (2d Cir. 1999) (aliens seeking adjustment of immigration status under 1986
legalization statute "face the government in a posture more similar to that of immigrants
requesting admission at the border").

868 F. Supp. 53, 59 (S.D.N.Y. 1994) ("INS has great discretionary authority to deny an alien's application for adjustment of status") (citation omitted), aff'd mem., 57 F.3d 1062 (2d Cir. 1995); see also Diric v. INS, 400 F.2d 658, 661 (9th Cir. 1968) (adjustment "can only be granted in meritorious cases; the burden is always upon the alien to establish that his application for such relief merits favorable consideration") (emphasis in original; citation and internal quotation marks omitted).

## II.    THE COMPLAINT SHOULD BE DISMISSED

### A.    The Court Should Dismiss the Complaint Because Plaintiff Alleges No Valid Statutory Basis of Subject Matter Jurisdiction

The Complaint should be dismissed because Plaintiff has not met his burden of demonstrating that the Court has subject matter jurisdiction to consider his claims.  It is well settled that "[t]he burden of proving jurisdiction is on the party asserting it."  Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996) (citation omitted); see also Kokkonen v. Guardian Life Ins., 511 U.S. 375, 378 (1994) (plaintiff faced with motion to dismiss must establish jurisdiction); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994) (party claiming jurisdiction must allege facts supporting assertion) (citing cases).  Thus, the "well-pleaded complaint" rule requires a plaintiff to state the basis for a federal court's subject matter jurisdiction on the face of his complaint.  See, e.g., Beneficial National Bank v. Anderson, 539 U.S. 1, 6 (2003) ("a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution") (quoting Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987); City of Rome v. Verizon

- 10 -

Communications, Inc., 362 F.3d 168, 173 (2d Cir. 2004); Fleet Bank, N.A. v. Burke, 160 F.3d

883, 885-86 (2d Cir. 1998).[9]

        1.    No Jurisdiction Lies Under the Mandamus Statute or the APA

Neither the mandamus statute, 28 U.S.C. § 1361, nor the APA, 5 U.S.C. § 701, provides a

basis for this Court's subject matter jurisdiction because the relief Plaintiff seeks is wholly

discretionary in nature.

Mandamus relief is considered "extraordinary" and should be granted only "sparingly."

See In re Repetitive Stress Injury Litigation, 11 F.3d 368, 373 (2d Cir. 1993) (citation omitted).

Accordingly, a writ of mandamus should not issue unless the relief sought is "subject to positive

command, plainly described, and free from doubt." Fifth Avenue Peace Parade Committee v.

Hoover, 327 F. Supp. 238, 242 (S.D.N.Y. 1971). Moreover, the Supreme Court long ago held

that "[m]andamus . . . cannot be used to compel or control a duty in the discharge of which by

law [a federal officer] is given discretion." Work v. United States ex rel. Rives, 267 U.S. 175,

177 (1925); Save the Dunes Council v. Alexander, 584 F.2d 158, 162 (7th Cir. 1978) ("It is

manifest that the judiciary cannot compel through a writ of mandamus a federal official to

perform any function unless the official is clearly directed by law to perform such a duty.").

---

   [9] In actions against the Government, the rule applies with greater force, inasmuch as the United States enjoys sovereign immunity from suit in the absence of a specific statutory consent to be sued. See, e.g., Office of Personnel Management v. Richmond, 496 U.S. 414, 432 (1990) ("authorizations for suits against the Government must be strictly construed in its favor"); United States v. Mitchell, 445 U.S. 535, 538 (1980) (waiver of sovereign immunity "cannot be implied but must be unequivocally expressed") (quoting United States v. King, 395 U.S. 1, 4 (1969)); United States v. Testan, 424 U.S. 392, 399 (1976); Presidential Gardens Assoc. v. United States ex rel. Sec'y of Housing and Urban Development, 175 F.3d 132, 139 (2d Cir.1999) ("A showing of jurisdiction is not alone sufficient to allow the instant suit to proceed – there must also be a showing of specific waiver of sovereign immunity.").

Similarly, chapter 7 of the APA, governing judicial review, specifically exempts from APA jurisdiction any "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also Webster v. Doe, 486 U.S. 592, 599 (1988) (termination of Central Intelligence Agency employee was discretionary action not subject to APA review); City of N.Y. v. Shalala, 34 F.3d 1161, 1167 (2d Cir. 1994) (scope of review of APA claims is "a narrow one") (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).   The Second Circuit has thus held that:

> [M]atters solely within the INS's discretion . . . are not reviewable under the [APA] or 28 U.S.C. § 1361 . . . . Aside from our powerlessness to intervene, the judicial creation of such a duty would have the potential for mischievous interference with the functioning of already overburdened administrative agencies.

See Wan Hsieh Shih v. Kiley, 569 F.2d 1179, 1182 (2d Cir. 1978) (citations omitted); Leonhard v. Mitchell, 473 F.2d 709, 712-13 (2d Cir. 1973) ("Traditional teaching views a writ of mandamus as appropriate solely 'to compel officials to comply with the law when no judgment [or discretion] is involved with the compliance.'") (citation omitted; brackets in original); cf. Padavan v. United States, 82 F.3d 23, 29 (2d Cir. 1996) (where New York State sought INS's compensation for costs related to illegal immigration, holding claim involved evaluation of INS "priorities [that are] strictly a discretionary matter, . . . not reviewable by this court").

In this case, Plaintiff's Complaint seeks an order (1) compelling ICE to join his reopening motion, and (2) scheduling an immediate hearing regarding Plaintiff's eligibility for adjustment of status.  As the relief sought by Plaintiff is wholly discretionary with the agency, neither the mandamus statute nor the APA provides a basis for subject matter jurisdiction here.

First, ICE has discretion to decline to join an alien's motion to reopen his removal

proceedings. The regulation governing reopening motions contains no requirement that a party

join a proposed motion under any circumstances, see, e.g., 8 C.F.R. § 1003.2(c)(3)(iii) (2005),

and "is couched solely in negative terms," Doherty, 502 U.S. at 322 (citation omitted). Thus, the

regulation "does not specify the conditions under which [a reopening motion] shall be granted,"

let alone the conditions under which a proposed such motion should be joined by the ICE. Id.

(citation omitted). Indeed, the Supreme Court has held that the agency "has the right to be

restrictive" regarding such motions, and that "[i]f [agency] discretion is to mean anything, it must

be that [it] has some latitude in deciding when to reopen a case." Abudu, 485 U.S. at 108

(internal marks and citations omitted); see also id. (granting reopening "'too freely will permit

endless delay of deportation by aliens creative and fertile enough to continuously produce new

material facts sufficient to establish a prima facie case'") (quoting INS v. Wang, 450 U.S. 139,

144 n.5 (1981)); cf. Stone v. INS, 514 U.S. 386, 401 (1995) (reopening motions are

"discretionary"); Doherty, 502 U.S. at 323 (holding that "Attorney General has 'broad discretion'

to grant or deny such motions") (citation omitted); Mardones v. McElroy, 197 F.3d 619, 624 (2d

Cir. 1999) (denial of reopening motion reviewed for abuse of discretion); Brice v. United States

Dep't of Justice, 806 F.2d 415, 419 (2d Cir. 1986) (same).

      Second, the Court also lacks jurisdiction to consider Plaintiff's claims seeking an order

compelling ICE to convene an "immediate hearing for an adjustment of status" and for the

Attorney General to grant him adjustment of status. Adjustment of status is a discretionary

immigration benefit that affords qualifying aliens the procedural opportunity to obtain lawful

permanent resident status from within the United States. See 8 U.S.C. § 1255 (2000). Indeed,

the Supreme Court has expressly held that "adjustment of status is a matter of grace, not right."

Elkins v. Moreno, 435 U.S. 647, 667 (1978).  An adjustment applicant must therefore demonstrate that he merits status adjustment in the exercise of the Attorney General's discretion. See 8 U.S.C. § 1255(a); Jain v. INS, 612 F.2d 683, 687 (2d Cir. 1979); see also Drax v. Reno, 338 F.3d 98, 113-115 (2d Cir. 2003) (describing adjustment of status as a multi-step process requiring: (1) an approved immigrant visa petition that is immediately available; (2) a determination that the alien meets all the statutory requirements for adjustment; and (3) a determination that he warrants the favorable exercise of discretion).  The agency therefore has "great discretionary authority to deny an alien's application for adjustment of status." Yeung v. Reno, 868 F. Supp. 53, 59 (S.D.N.Y. 1994).

As adjustment of status is a discretionary benefit, judges in this District have consistently held that the Court lacks subject matter jurisdiction to compel the adjudication of adjustment applications.  See, e.g., Keane v. Chertoff, 419 F. Supp. 2d 597, 599-602 (S.D.N.Y. 2006) (holding that neither mandamus relief nor APA review are available to compel adjudication of applications for adjustment of status); Karan v. McElroy, No. 02 Civ. 6678 (JGK), 2003 WL 21209769, at *1 (S.D.N.Y. May 23, 2003) (same); Yilmaz v. McElroy, No. 00 Civ. 7542 (RCC), 2001 WL 1606886, at *3 (S.D.N.Y. Dec. 17, 2001); Zheng v. Reno, 166 F. Supp. 2d 875, 880-81 (S.D.N.Y. 2001); see also Espin v. Gantner, 381 F. Supp. 2d 261, 265 (S.D.N.Y. 2005); Hanif v. Gantner, 369 F. Supp. 2d 502, 505-06 (S.D.N.Y. 2005); Zaytsev v. Gantner, No. 04 Civ. 7101 (WHP), 2004 WL 2251665, at *1 (S.D.N.Y. Sept. 24, 2004); Vladagina v. Ashcroft, No. 00 Civ. 9456 (DAB), 2002 WL 1162426, at *4 (S.D.N.Y. Apr. 8, 2002).[10]

---

[10]  To the extent that Plaintiff's Complaint can be liberally construed to seek an order compelling ICE to grant Plaintiff an extension of voluntary departure, this Court also lacks jurisdiction to compel ICE to issue such relief.  See 8 U.S.C. § 1229c(f) ("No court shall have

- 14 -

In sum, because Plaintiff's Complaint seeks relief that is wholly discretionary, neither the mandamus statute nor the APA confer subject matter jurisdiction on the Court to consider his claims.

2.    No Jurisdiction Lies Under the Federal Question Statute

Nor does jurisdiction lie under the federal question statute, 28 U.S.C. § 1331. "Federal question jurisdiction generally exists only when a well-pleaded complaint raises issues of federal law on its face." Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8 (2d Cir. 1992) (citation omitted); see also Ivy Broadcasting Co. v. A.T. & T. Co., 391 F.2d 486, 493 (2d Cir. 1968) (holding that under 28 U.S.C. § 1331, "that federal law furnishes a necessary ingredient of a claim is insufficient as a basis for federal jurisdiction, unless the claim presents an issue requiring construction of an Act of Congress").  Thus, to allege jurisdiction under 28 U.S.C. § 1331, a party must identify an interest protected by the Constitution, or any federal statute or regulation, of which he has been deprived.   See, e.g., Doe, 635 F.2d at 94 (subject matter jurisdiction, "if it exists at all, must be sought in the statute giving rise to the cause of action"); Checknan v. McElroy, 313 F. Supp. 2d 270, 275 (S.D.N.Y. 2004) (no federal question jurisdiction where plaintiff "failed to identify an interest of which he has been deprived that is protected by federal law"); Batista v. U.S. INS, No. 99 Civ. 2847 (MBM), 2000 WL 204535, at *3 (S.D.N.Y. Feb. 22, 2000) (because "Plaintiffs have not alleged  that [the applicant] has been deprived of . . . a

---

jurisdiction over an appeal from denial of a request for an order of voluntary departure"); see also Cervantes-Ascencio v. U.S. INS, 326 F.3d 83, 86 (2d Cir. 2003) (noting that "we have long held that voluntary departure is not something to which an alien is generally entitled as a matter of right").

property or liberty interest[,] § 1331 jurisdiction cannot be exercised") (citation omitted).[11]

Plaintiff neither pleads federal question jurisdiction in his Complaint nor identifies an interest protected by federal law. Plaintiff can show no right to discretionary reopening of his removal proceeding, and the Second Circuit and judges in this District have held that an alien like Plaintiff has no protected interest in his own status in the United States, see, e.g., Azizi v. Thornburgh, 908 F.2d 1130, 1134 (2d Cir. 1990) (an alien "ha[s no] inherent property interest in an immigrant visa"); Rahman, 884 F. Supp. at 787 (S.D.N.Y. 1995) (alien "do[es] not have a constitutionally-protected interest" in immigration status); Aliens for Better Immigration Laws v. United States, 871 F. Supp. 182, 185 (S.D.N.Y. 1994) (same); Yilmaz, 2001 WL 1606886, at *3 (same).[12] Accordingly, as the federal question statute provides no basis for subject matter jurisdiction, the Complaint should be dismissed.

**B.    The Court Should Also Dismiss the Complaint for Failure to State a Claim**

Plaintiff's Complaint should also be dismissed for failure to state a claim upon which relief can be granted.   Plaintiff fails to state a due process claim under the Constitution.

---

[11] Moreover, "[s]ection 1331 is in no way a general waiver of sovereign immunity." Doe, 635 F.2d at 94; see also Pieczenik v. Cambridge Antibody Technology Grp., No. 03 Civ. 6336 (SAS), 2004 WL 1118500, at *3 n.32 (S.D.N.Y. May 14, 2004) ("a plaintiff pursuing a claim against a federal officer must demonstrate either that the suit is permissible under a specific statutory authorization to sue the United States or that, in effect, the proceeding is not a suit against the United States"); Shabtai v. U.S. Dep't of Education, No. 02 Civ. 8437 (LAP), 2003 WL 21983025, at *4 (S.D.N.Y. Aug. 20, 2003) (plaintiff "must identify some statutory waiver of the government's sovereign immunity in order to maintain her suit").

[12] Nor does the Constitution recognize the right of Plaintiff's spouse to have him present in the country. See, e.g. , Anetekhai v. INS, 876 F.2d 1218, 1222 & n.5 (5th Cir. 1989); Almario v. Attorney General, 872 F.2d 147, 151 (6th Cir. 1989);  Silverman v. Rogers, 437 F.2d 102, 107 (1st Cir. 1970); cf. Burrafato v. U.S. Dep't of State, 523 F.2d 554, 555 (2d Cir. 1975) (no constitutional right of citizen is violated by deportation of alien spouse); Swartz v. Rogers, 254 F.2d 338 (D.C. Cir. 1958) (same).

<u>See</u> Compl., at ¶¶ 42-47.  As Plaintiff has no constitutionally protected right to adjustment of status, or any other discretionary relief, he cannot challenge the denial of such relief as a violation of due process.  <u>See</u> <u>Nativi-Gomez v. Ashcroft</u>, 344 F.3d 805, 808-09 (8th Cir. 2003) (because alien did not have a constitutionally protected right to adjustment of status, he could not challenge the denial of his motion to reopen for such relief on due process grounds); <u>cf.</u> <u>Bazuaye v. INS</u>, 79 F.3d 118, 120 (9th Cir. 1996) (deportable alien does not have a liberty interest in discretionary relief of voluntary departure); <u>Cervantes-Ascencio v. INS</u>, 326 F.3d 83, 86 (2d Cir. 2003) (review of denial of voluntary departure substantially curtailed because entitlement to such relief was discretionary and not a "right").

Moreover, Plaintiff fails to state any claim based on his purported entitlement to adjustment of status, <u>see</u> Compl., at ¶ 47, because he is statutorily ineligible for adjustment of status.  Section 1229c(d) provides that "if an alien is permitted to depart voluntarily under this section and voluntarily fails to depart the United States within the time period specified, the alien . . . shall be ineligible for a period of 10 years, to receive any further relief" under the Immigration and Nationality Act ("INA"), including adjustment of status.  <u>See</u> 8 U.S.C. § 1229c(d)(1).  Indeed, in <u>Singh v. Gonzales</u>, the Second Circuit expressly held that Section 1229c(d) "bar[red]" the petitioner's "application for adjustment of status because he failed to comply with the voluntary departure deadline."  468 F.3d 135, 138 (2d Cir. 2006).  Plaintiff does not dispute that he failed to depart the United States by June 20, 2003, his voluntary departure deadline.  <u>See</u> Compl., at ¶ 30.  Accordingly, as he is currently statutorily ineligible for the benefit his Complaint ultimately seeks, he fails to state a claim upon which relief can be granted in this case.

**CONCLUSION**

For the reasons set forth above, the Complaint should be dismissed in its entirety.

Dated: New York, New York
November 16, 2007

                                    MICHAEL J. GARCIA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for Defendants

By:                          _____

                                      WENDY H. WASZMER
                                    Assistant United States Attorney
                                    Tel.: (212) 637-2729
                                    Fax: (212) 637-2717

To:    ALEXANDER S. MULGREW, ESQ.
       THOMAS SASSONE, ESQ.
       Attorneys for Plaintiff
       Mulgrew & Sassone
       22 South Main Street
       New City, New York 10956

- 18 -